# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **DONALD FIELDS,** | ) | |
| | ) | **Civil Action No. 2:06cv00036** |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **DAVID ROBINSON,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | **By: Pamela Meade Sargent** |
| **VIRGINIA DEPARTMENT OF** | ) | **United States Magistrate Judge** |
| **CORRECTIONAL** | ) | |
| **EDUCATION,** | ) | |
| | ) | |
| Defendants. | ) | |

The plaintiff, Donald Fields, brought this case against defendants David Robinson, the Warden of Wallens Ridge State Prison, ("Wallens Ridge"), located in Wise County, Virginia, and the Virginia Department of Correctional Education, ("DCE"), his former employer. Fields seeks recovery under 42 U.S.C. § 1983 based on violations of his First and Fourteenth Amendment rights by defendant Robinson stemming from the events surrounding Fields's involuntary resignation from his teaching position with the DCE at Wallens Ridge. The specific infringements that serve as the basis of Fields's § 1983 claim are the denial of his rights to equal protection, procedural due process and substantive due process. Fields also alleges state tort law claims against Robinson for interference with his employment and for defamation. The majority of the claims Fields makes are directed at Robinson in his official and individual capacities. The DCE is primarily included as a necessary party

Case 2:06-cv-00036-GMW-PMS   Document 17   Filed 11/14/06   Page 1 of 32   Pageid#: 76

for the remedies that the plaintiff is seeking. The only claim which is directed at the DCE, as well as against Robinson in both his official and individual capacities, is the § 1983 claim based on an alleged denial of Fields's right to substantive due process.

This matter is currently before the court on the Defendants' Motion to Dismiss the case due to the plaintiff's failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), (Docket Item No. 8), ("Motion"). This court has jurisdiction in this case pursuant to 28 U.S.C. §§ 1331, 1343 and 1367. This Motion is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

## *I. Facts*

For the purpose of the court's consideration of the Motion, the facts, as alleged in the plaintiff's complaint, will be accepted as true. Donald Fields was an employee of the DCE, an agency of the Commonwealth of Virginia. He was hired on May 25, 1999, to serve as a vocational teacher for inmates at Wallens Ridge. Fields alleges that he was no longer a probationary employee and could be fired or forced to resign from his position with the DCE only for good cause. As a DCE employee, Fields was entitled to full access to the DCE's grievance process if he were disciplined, terminated or forced to resign. By Fields's own account, he "always performed his job in a most satisfactory manner." (Plaintiff's Complaint, (Docket Item No. 1), ("Complaint"), at 3.)

Wallens Ridge is a level five, maximum security, state prison designed to house

-2-

some of the worst offenders in the state. Wallens Ridge is operated by the Virginia Department of Corrections, ("DOC"), another agency of the Commonwealth of Virginia. At all times relevant to this case, Robinson was the Warden of Wallens Ridge and was charged with insuring the security of this facility. Robinson was an employee of the DOC, and had no direct authority over Fields or other DCE employees. Instead, Fields's direct supervisor was George Erps, the Principal of Education at Wallens Ridge. However, ultimate control over the operation and security of the prison rested with Robinson and the DOC.

Fields alleges that when Robinson became Warden, Fields started to encounter problems at work. The procedures at the prison changed, and Fields became subject to more frequent criticism for failing to comply with new procedures. Fields alleges that Erps began to criticize him, and, at times, this criticism was unjust. Fields also alleges that he was told that someone in the DOC's administrative office was out to get him. However, from Fields's complaint, it is unclear if Fields was told that someone was out to get Erps or out to get Fields.

May 3, 2005, was Fields's last day teaching at Wallens Ridge. While Fields was teaching, the students were asked to line up and leave the classroom as corrections officers, with a drug-sniffing dog, did a drug sweep of the classroom. During this sweep, the defendants claim that the drug dog "sat down" on Fields in the classroom, indicating that the dog had detected the odor of illegal drugs emanating from Fields. The officers left the room and came back to Fields's classroom with Robinson, the Assistant Warden, a Major and several corrections officers. These people examined the bathroom, and Robinson began to question Fields. Fields was asked whether he had flushed something down the toilet and if Fields knew why the

-3-

drug dog had "sat down on him." Fields answered that he did not know why the drug dog would have detected the odor of illegal drugs on him.

Fields was then taken to be strip searched by the Assistant Warden and the Major. No drugs were found on Fields during the strip search. Fields was again questioned by the Warden. At this point, the Warden asked if Fields would allow the corrections officers to search his vehicle. Fields consented to a search of his vehicle.

Fields's vehicle, a 2000 Ford Escort, was parked in the prison's parking lot. With Fields observing, the corrections officers and the drug-sniffing dog commenced a search of Fields's vehicle. In the process of this search, the officers discovered a small amount of a substance that appeared to be marijuana in the console of the plaintiff's automobile. A piece of this substance was placed into a field testing kit, and it tested positive for marijuana. At this point, Fields alleges that he was asked by a corrections officer if he had any teenage children that had use of his car. Fields answered this question affirmatively.

After discovering the marijuana in Fields's possession, Robinson approached Fields and stated that, because of this drug possession on the prison property, he was banning Fields from the institution as long as he was Warden. Robinson also indicated that regardless of what DCE decided to do with Fields, Fields would not be allowed back into Wallens Ridge.

Following the discovery of illegal drugs in Fields's possession on prison property, Fields was asked to submit to a drug test. Fields consented to taking a drug test, and he was driven to Norton, Virginia, were a drug test was administered.

-4-

Following this test, Fields was told to go home and await contact by his supervisor.

Before the results of the test came back, Fields was contacted by Erps, his DCE supervisor. Erps told Fields that Fields's drug possession was a problem, and that Robinson was certain that Fields's drug test was going to come back positive. Erps indicated that if Fields were to resign, Erps would provide him with a good recommendation in the future. Fields agreed to resign, and he submitted his handwritten resignation to Erps later that day.

The following day, Fields was informed that his drug test was negative. On May 17, 2005, Fields filed a grievance with the DCE, with respect to the circumstances surrounding his resignation, seeking reinstatement. On May 25, 2005, Fields received a letter in response to his grievance from Belinda Friday, Deputy Superintendent of Operations for the DCE. This letter indicated that the DCE had decided Fields's resignation was involuntary and could be treated as such during the grievance process. The DCE also concluded that for its purposes, ownership and occupation of a vehicle did not create a presumption of intentional possession of marijuana.

Fields has failed to allege whether Friday's letter indicated whether the DCE had ruled that Fields's marijuana possession was either intentional or unintentional. Regardless, it appears from Fields's allegations that the DCE assumed that Fields possessed marijuana on prison property. Despite this drug possession, Friday's letter indicated that the DCE concluded that the amount of marijuana was small, and they would allow Fields to return to work if the Warden would allow him to return to Wallens Ridge. However, as the letter further indicated, the Warden would not allow

-5-

Fields back into the prison. Therefore, the DCE did not have the authority to grant Fields's reinstatement. The letter stated that the action of the DOC, not the action of the DCE, prohibited Fields from returning to his work site. As a result, Fields's grievance with the DCE was denied because the grievance now arose with respect to DOC action, not DCE action. Simply put, the DCE would have allowed Fields to be reinstated, but he could not return to work because the Warden had banished him from the prison. Therefore, the letter concluded that Fields's complaint did not lie with the DCE for the forced resignation, but with the DOC for the banishment.

In addition, at some point after Fields's resignation, an entry was made into the DOC's computer system at Wallens Ridge by an unknown employee of the DOC. This entry consisted of the statement "possession of illegal drugs" next to Fields's name. (Complaint at 9.) Fields alleges this was done at the request of Robinson or at least with the approval of Robinson.

Finally, on or about October 25, 2005, Fields alleges to have mailed a claim to the Attorney General of Virginia and the Director of the Virginia Department of Risk Management, pursuant to Virginia Code Annotated §§ 8.01-195.1–195.9 (2000 Repl. Vol. & Supp. 2006). More than six months have passed since the filing of this claim, thus, Fields contends that he has exhausted all administrative remedies.

## II. Analysis

### A. Standard of Review for a Motion to Dismiss

A motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6) tests

the legal sufficiency of a complaint. In considering such a motion, the court should accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff. *See, e.g., De Sole v. U.S.*, 947 F.2d 1169, 1171 (4th Cir. 1991) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)).

In order to grant a motion to dismiss, it must appear certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46 (1957); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

When a 12(b)(6) motion deals with a civil rights complaint, the court should not dismiss the claim unless it appears certain that the plaintiff is not entitled to relief under any legal theory which might plausibly be suggested by the facts alleged. *See Harrison v. U. S. Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988). However, the court need not accept as true the legal conclusions set forth in a plaintiff's complaint. *See Edwards*, 178 F.3d at 244. Furthermore, mere legal conclusions couched as factual allegations need not be accepted as true. *See Assa'Ad-Faltas v. Virginia*, 738 F. Supp. 982, 985 (E.D.Va. 1989) (citing *Papasan v. Allain* 478 U.S. 265, 286 (1986)).

*B. Fields's Claims and Relief Sought*

Fields argues that the facts he has presented establish violations of his First and Fourteenth Amendment constitutional rights by Robinson and the DCE, and he seeks

-7-

recovery for these violations pursuant to 42 U.S.C. § 1983. Fields seeks the following relief for these alleged § 1983 violations: a declaration that his constitutional rights were violated, as well as equitable relief to remedy his perceived mistreatment. The relief he seeks includes, but is not limited to, reinstatement, full back pay, benefits, compensatory damages, attorney's fees and costs. As an alternative to reinstatement, Fields seeks to be awarded front pay.

Besides his § 1983 claims, Fields also asserts that Robinson committed state law torts against him by interfering with his employment and by defaming him. For the alleged interference, Fields seeks a judgment against Robinson for $400,000.00 and costs. For the alleged defamation, Fields seeks a judgment against Robinson for $200,000.00 in compensatory damages and $200,000.00 in punitive damages. All of these allegations will be examined individually to determine if, in fact, Fields has stated claims upon which relief may be granted.

*1. 42 U.S.C. § 1983 Claims*

The primary claims that Fields makes are violations of 42 U.S.C. § 1983. As the basis for his § 1983 claims, Fields alleges that his rights under the First and Fourteenth Amendments to the United States Constitution were infringed. However, the plaintiff's complaint and the plaintiff's response to the defendant's motion to dismiss provide facts and allegations dealing solely with violations of the Fourteenth Amendment. Additionally, at the hearing held on this Motion on October 25, 2006, the plaintiff conceded that there was no First Amendment violation alleged in the Complaint. Therefore, the court will examine only the alleged violations of the Fourteenth Amendment.

With respect to the Fourteenth Amendment, Fields claims that his rights to equal protection under the laws and procedural due process were infringed by Robinson in both his official and individual capacity. Fields also asserts that his right to substantive due process was infringed by Robinson, in both his official and individual capacity, and by the DCE.

To state a claim under § 1983 one must allege that the defendant (1) acted under color of state law and (2) deprived the plaintiff of a constitutional right, privilege or immunity. *See* 42 U.S.C.A. § 1983 (West 2003); *West v. Atkins*, 487 U.S. 42, 48 (1988). This section should be broadly construed. *See Dennis v. Higgins*, 498 U.S. 439, 443 (1991). However, an action brought under § 1983 must be brought against a "person, " and the Commonwealth of Virginia is not considered a "person" for the purpose of a suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). State agencies and departments, as well as state officials acting in their official capacities, also are not considered "persons" under § 1983. *See Will*, 491 U.S. at 70-71. However, the Supreme Court has noted an exception to its holding in *Will*; a state official can be sued under § 1983 in his or her official capacity for injunctive relief. *See Will*, 491 U.S. at 71 n.10.

While the Supreme Court addresses personhood under § 1983 and Eleventh Amendment immunity almost interchangeably in *Will*, the Fourth Circuit has indicated that Eleventh Amendment immunity should be used to approach these cases instead of an analysis of "personhood" under § 1983. *See Harter v. Vernon*, 101 F.3d 334, 338–39 (4th Cir. 1996). Absolute immunity based on the Eleventh Amendment is a bar to federal court jurisdiction; thus, it would precede any analysis under § 1983. *See Harter*, 101 F.3d at 338–39 n. 1. Additionally, any official or entity that is

immune from suit under the Eleventh Amendment is not considered a person under § 1983. *See Harter*, 101 F.3d at 338–39 n. 1.

Approached from the perspective of Eleventh Amendment immunity, the Supreme Court is clear in its recent holdings that state "sovereign immunity applies regardless of whether a private plaintiff's suit is for monetary damages or some other type of relief." *Fed. Mar. Comm'n v. S. C. State Ports Auth.*, 535 U.S. 743, 765 (2002) (citing *Seminole Tribe of Fl. v. Fl.*, 517 U.S. 44, 58 (1996)). This Eleventh Amendment immunity from all types of suit also applies to people and entities considered "arms of the State." *Will*, 491 U.S. at 70. However, as indicated previously, *Will* notes that there is a long-standing exception to state sovereign immunity allowing state officials, acting in their official capacity, to be sued for injunctive relief. *See* 491 U.S. at 71 n.10. As a result of the Supreme Court's holding in *Will* and in *Fed. Mar. Comm'n*, none of Fields's § 1983 claims against the DCE are valid. These claims are all barred by the Eleventh Amendment. Additionally, the claims against Robinson, in his official capacity, which seek monetary recovery also are invalid based on the Eleventh Amendment. Thus, these claims should be dismissed.

Fields does make some claims against Robinson in his official capacity, which seek nonmonetary, equitable relief. While some lower courts have held that injunctive relief under § 1983 is not available against state officials sued in their official capacity, the Supreme Court has more consistently held that state officials can be sued in their official capacity for injunctive relief under § 1983. *Compare Will*, 491 U.S. at 71 n.10, *with Taliaferro v. State Council of Higher Educ.*, 372 F. Supp. 1378, 1382 (E.D. Va. 1974).

-10-

The relief that Fields requests for his § 1983 charges is largely monetary and, thus, not available in a suit against Robinson in his official capacity. However, Fields does seek the following equitable relief: a declaration that Fields's constitutional rights were violated, reinstatement to his former position and any other equitable orders necessary to "remedy the wrongs." (Complaint at 10-11.) Robinson was not, and has never been, Fields's supervisor, and the state agency for whom Robinson works, the DOC, was not Fields employer. Therefore, reinstatement is not a viable equitable remedy that can be levied against Robinson in his official capacity, and it is barred against the DCE pursuant to the Eleventh Amendment.

Based on Fields's complaint, the most obvious equitable relief would be an injunction requiring Robinson to allow Fields to reenter Wallens Ridge. Naming a state official in his or her official capacity is essentially the equivalent of suing the government entity itself. *See Brandon v. Holt*, 469 U.S. 464, 469–70 (1985). To impose this type of relief, it must first be determined whether any relief is potentially warranted by the facts pleaded by Fields in this case.

As a result, the only equitable remedies possible against Robinson in his official capacity, of those sought by Fields, would be a declaratory judgment that Robinson violated Fields's constitutional rights and an order to readmit Fields to Wallens Ridge. This court must, therefore, examine the claims that Robinson, in his official and individual capacity, infringed Fields's rights to equal protection under the laws, procedural due process and substantive due process. Once these alleged constitutional violations have been examined, this court can determine whether or not Fields has stated a claim that could result in his recovery of monetary damages against Robinson in his individual capacity or equitable relief against Robinson in his official capacity.

-11-

With respect to these constitutional claims, Robinson does not challenge that his actions giving rise to Fields's complaint were performed under color of state law. Instead, the dispute over this Motion centers around whether the second component of a § 1983 claim, the deprivation of a constitutional right, has been properly pleaded. The court will separately address the alleged constitutional violations that remain and determine if Fields has met the legal requirements necessary to establish a claim under § 1983 upon which relief may be granted.

### i. Equal Protection Claim

Fields's first claim brought under 42 U.S.C. § 1983, is based on an allegation that Robinson denied Fields his Fourteenth Amendment right to equal protection under the laws. This equal protection claim was brought against only Robinson, not against the DCE, and is based squarely on Robinson's decision to permanently prohibit Fields from entering Wallens Ridge as long as Robinson remained Warden of the facility.[1] Fields is not a member of an identifiable class; therefore, to establish an equal protection violation, he must demonstrate that Robinson intentionally treated him differently from others similarly situated and there was no rational basis for that treatment. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 442 (1985). Fields alleges that his banishment from Wallens Ridge effectively terminated his employment with the DCE. Fields also asserts that Robinson could not impose a similar ban on his own employees who worked for the DOC; therefore, Fields alleges

---

[1] Fields's complaint states that he was banned permanently from Wallens Ridge and also states that Robinson told Fields that he would not be allowed back into the prison as long a he was Warden. (Complaint at 5.)

that Robinson did not treat Fields equally.

This claim is ill-conceived. While Fields may have sufficiently pleaded that he had a property interest in his employment with the DCE, he fails to establish how he was denied equal protection of the laws with respect to that interest. Robinson may have treated Fields differently than he was able to treat a DOC employee, but Fields was not a DOC employee. Fields worked for the DCE and, thus, was not entitled to the same treatment as a DOC employee. Essentially, Fields was a visitor allowed onto the prison grounds for business purposes. Robinson and the DOC had no control over Fields's hiring or firing. However, as Warden, Robinson could control who was allowed to enter the prison.

The Warden of a prison is responsible for maintaining the security and control of his/her institution. *See Bell v. Wolfish*, 441 U.S. 520, 546–47 (1979); *see also* VA. CODE ANN. § 53.1-30 (2005 Repl. Vol.). Chief among the Warden's responsibilities in maintenance of the safety and security of his prison is keeping contraband from entering the prison. As a result, any person entering any state correctional facility is subject to search, and the Warden may, for security purposes, decide who may and may not be allowed on the premises. *See* VA. CODE ANN. § 53.1-30 (2005 Repl. Vol.).

There is a long-established judicial policy not to second guess or interfere in the operation and administration of prisons. *See Jones v. N. C. Prisoners' Labor Union, Inc.,* 433 U.S. 119, 126 (1977) (citing *Procunier v. Martinez*, 416 U.S. 396, 405

-13-

(1974)); *Wetzel v. Edwards*, 635 F.2d 283, 288 (4th Cir. 1980). Courts have long recognized that prison administrators have far greater knowledge about providing for the safety of their institutions. *See Procunier*, 416 U.S. at 405. Therefore, courts will not interfere with prison administration unless there is a clear abuse of discretion with respect to prison administration or discipline. *See Wetzel*, 635 F.2d at 288. "'[W]here state penal institutions are involved, federal courts have a further reason for deference to the appropriate prison authorities.'" *Jones*, 433 U.S. at 126 (quoting *Procunier*, 416 U.S. at 405). Maintaining institutional order and security in a prison is the central objective of prison officials, and they are given a great deal of deference by the courts with respect to their decisions regarding security considerations. *See Bell*, 441 U.S. at 546–47. Additionally, maintaining the security of a prison is considered a legitimate government interest. *See Shaheed v. Winston*, 885 F. Supp. 861, 867 (E.D. Va. 1995) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987)).

A decision about who should be banned from a prison for security purposes is the type of administrative security decision that should be given deference by the courts. Fields was found to have possessed illegal drugs on prison property. It is clear from prison administrative policy, statutes and case law that anyone who is on prison property at the approval of the Warden may be denied entrance to the prison by the Warden if they jeopardize the safety and security of the prison. The fact that Robinson might not have been able to take this type of action against his own DOC employees is irrelevant because Fields was not his employee or a DOC employee. Fields was basically a visitor on the property brought in to perform a service for the inmates and was treated in line with any other non-DOC employee on prison property. Prison security is a legitimate governmental interest, and Robinson's decision on how

-14-

to best secure his prison was rational given the circumstances. Therefore, it should not be second-guessed. Even assuming that Fields has a property right in his employment with the DCE, the security of the prison is a legitimate governmental interest that would trump this right.

There was no equal protection violation in Robinson's actions, as alleged by Fields, because Fields failed to establish that he was treated unequally with respect to the classes of persons to which he belongs, DCE employees and non-DOC employees on prison property at the approval of the Warden.[2]  As a matter of law, Robinson's treatment of Fields was not unequal. Instead, the facts alleged suggest that Robinson was acting rationally, within his powers and duties as Warden of a prison to protect the safety and welfare of his institution and inmates. Fields has made no attempt to suggest that Robinson did not have the power to take the action he did against DCE employees and non-DOC employees. Therefore, Fields has failed to state a claim upon which relief may be granted on a § 1983 equal protection violation theory.

---

[2] The case relied upon by Fields to establish that he has sufficiently pleaded an equal protection claim and a procedural due process claim that should survive a motion to dismiss, *Reed v. Sword*, 2005 WL 1225927 (W.D. Va. May 24, 2005), is an unpublished decision which provides no persuasive support for Fields's claims. The *Reed* case dealt with a situation different from the situation at hand. In *Reed*, the plaintiff was a former employee of the DOC and of the DOC officials who were sued in their official capacity. In this case, however, Fields was not Robinson's employee and not a DOC employee. Therefore, Fields's treatment in comparison to a DOC employee is irrelevant because it is not establishing that Fields was treated any differently by Robinson than other similarly situated DCE or even non-DOC employees.

-15-

*ii. Procedural Due Process Claim*

Fields's second claim is that he was denied his Fourteenth Amendment right to procedural due process of law by Robinson, creating a violation of 42 U.S.C. § 1983. The basis of this claim is that Fields had constitutionally protected property and liberty interests in his job with the DCE. (Complaint at 10.) Fields alleges that, by banning him from the prison, Robinson denied him access to a meaningful grievance process. Furthermore, Fields claims that his liberty interest was infringed by Robinson making a statement to Field's supervisor, Erps, that he was confident that Fields's drug test would come back positive. He also claims his liberty interest was infringed by Robinson when a notation was placed on the Wallens Ridge computer system stating that Fields had possessed drugs.

A procedural due process claim requires two elements. First, the plaintiff must establish a liberty or property interest infringed upon by the State. *See Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). Second, the plaintiff must demonstrate that procedures to deal with the deprivation were constitutionally inadequate. *See Thompson*, 490 U.S. at 460. A person must have a legitimate claim to a liberty or property interest, which must be more than "'an abstract need or desire' and must be based on more than 'a unilateral hope.'" *Thompson*, 490 U.S. at 460 (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972) and *Conn. Bd. of Pardons v. Dumschat,* 452 U.S. 458, 465 (1981)). Protected interests arise either from the Due Process Clause itself or from state law. *See Thompson*, 490 U.S. at 460; *Hewitt v. Helms*, 459 U.S. 460, 466 (1983).

Therefore, for Fields to state a claim under a procedural due process theory, he must first establish that he had a liberty or property interest that was infringed upon. The Fourteenth Amendment provides a guarantee of liberty "to engage in any of the common occupations of life." *Cox v. N. Va. Transp. Comm'n*, 551 F.2d 555, 558 n. 2 (4th Cir. 1976) (quoting *Meyer v. Neb.*, 262 U.S. 390 (1923)). This right "is offended when the state denies a hearing to a discharged employee whom it has accused publicly of dishonesty or immorality. Procedural due process requires that a person dismissed under such a cloud be given notice and an opportunity to clear his or her name." *Cox*, 551 F.2d at 558. Fields has claimed that this interest has been infringed upon by the state based on the conduct of Robinson surrounding Fields's resignation.

The first alleged violation of Fields's liberty interest stems from the posting of a note on the prison computer system indicating that he "possessed illegal drugs." (Complaint at 9.) Fields admits that he was told that marijuana was found in his automobile, which, at the time, was in his exclusive possession on prison property. (Complaint at 5.) Fields asserts that any possession of marijuana was unintentional. Nevertheless, it is still possession of illegal drugs. The statement posted on the prison's computer system does not say that Fields intentionally possessed drugs or that Fields was convicted of drug possession, it merely stated that Fields possessed drugs. Given the facts supplied by Fields in his complaint, this statement is factual.

Furthermore, Fields was in no way denied access to a potentially name clearing grievance procedure by Robinson or the DCE. Fields had the opportunity to grieve the allegations that he possessed illegal drugs. Therefore, Fields also was given the

-17-

requisite name-clearing hearing that would negate any liberty interest violation.

The second incident Fields cites as an infringement on his liberty interest stems from a statement Robinson made to Erps. Robinson allegedly stated to Erps that Robinson would stake his reputation on Fields's drug test coming back positive. (Complaint at 6.) This statement is essentially accusing Fields of recently taking illegal drugs. Fields's drug test came back negative; therefore, this allegation ended up being false. However, there is no evidence presented that this statement was made publicly as required by *Cox*. *See* 551 F.2d at 558. Fields alleges only that the statement was made by Robinson to Erps. It was not made to the news media, as was the case in *Cox*, or even posted on the prison's computer system. *See* 551 F.2d at 557. Thus, this statement cannot serve as the basis for a violation of Fields's liberty interest because it was not public.

Furthermore, neither Robinson nor the DCE denied Fields the right to a name-clearing hearing on this issue. Fields's grievance proceedings through the DCE provided him an ample forum to clear his name and refute the statement that he had recently used illegal drugs. As a result of this hearing and the drug test itself, Fields's name was cleared on this charge. Therefore, there was no procedural due process violation based on this statement by Robinson.

The final procedural due process violation alleged by Fields is that he had a property interest in his employment with the DCE and, as a result, he had a right to a grievance process after his forced resignation. Fields's complaint appears to have

-18-

pleaded sufficient facts to establish that he has a property right in his employment with the DCE.[3]  However, Fields's procedural due process violation claims still fail.

Fields claims that Robinson infringed upon his right to grieve his resignation by not allowing Fields to return to the prison.  However, Fields admits that Robinson was not his supervisor and did not have any control over Fields's employment with the DCE.  (Complaint at 3.)  Additionally, Fields does not allege that Robinson ever did anything to restrict Fields's access to his employer's grievance process.  Fields does not allege any violations by the DCE throughout the grievance process, and Fields accepted the DCE's final disposition of the case.  (Complaint at 7–8.)  As a result, procedural due process claims are misdirected against Robinson.

Robinson did nothing to limit Field's access to the DCE's grievance procedure either in his official capacity or in his personal capacity.  Fields admits that he was allowed access to the DCE's grievance procedure, his case was examined and, in the end, the relief he requested was not available.  (Complaint at 7–8.)  Fields requested that he be reinstated with full back pay and benefits.  The DCE concluded that it could not grant Fields's request for reinstatement at Wallens Ridge because Robinson had banned him from the premises. In essence, at the conclusion of Fields's grievance

---

[3] In Virginia there is a presumption of at-will employment.  *See County of Giles v. Wines*, 546 S.E.2d 721, 723 (Va. 2001).  This presumption may be overcome by a showing that an employee had a signed contract with their employer or was employed for a set duration of time. *See County of Giles*, 546 S.E.2d at 723.  The Fourth Circuit has held that nonprobationary employees in Virginia have a property interest in their jobs.  *See Detweiler v. Commonwealth of Va. Dep't of Rehabilitative Servs.*, 705 F.2d 557, 560 (4th Cir. 1983).  Fields has asserted that he was not a probationary employee and could be terminated only for good cause; therefore, he has established a property interest in his job.

proceedings with the DCE, he was told that his complaint lay with the DOC. Therefore, Fields was given a full grievance hearing by his employer, the DCE, and his access to those proceedings was in no way hampered by Robinson.

Fields is admittedly not a DOC employee and, thus, does not have access to the DOC employee grievance procedure. However, he still could have contacted the DOC and made efforts to have Robinson's decision to banish him from Wallens Ridge reconsidered. Fields has not alleged that he or the DCE made any attempt to address Robinson's action through any DOC administrative channels. Furthermore, if the DCE had any interest in allowing Fields to continue his employment, it could have contacted the DOC for him in an attempt to have Robinson's decision reconsidered.

Based on the facts as alleged by Fields, Fields was given all the process that he was due via his grievance hearing before the DCE. The Fourth Circuit has upheld Virginia's state employee grievance procedure as providing procedural due process. *See Detweiler*, 705 F.2d at 560. Fields was provided a post discharge hearing. Therefore, Fields's only salient procedural due process complaint rests on the adequacy of the remedy this hearing could provide. However, Virginia law clearly provides that the following issues should not proceed to a grievance hearing: "(ii) work activity accepted by the employee as a condition of employment or which may reasonably be expected to be part of the job content . . . (iv) methods, means, and personnel by which work activities are to be carried on." VA. CODE. ANN. § 2.2-3004(C) (2005 Repl. Vol.). An important work activity accepted as a condition of employment by Fields in his position at Wallens Ridge was his ability to enter the prison. When Fields was banished from the prison for his drug possession, he was no

-20-

longer able to meet the methods by which his employment was to be conducted. Therefore, Fields was not entitled to a grievance hearing on his banishment from the prison as a grounds for denying his reinstatement. Fields received the process he was entitled to, a grievance proceeding dealing with his drug possession and involuntary resignation. He was not entitled to any review of Robinson's decision under Virginia Code.

Furthermore, Robinson's decision to banish Fields from Wallens Ridge was not a denial of Fields's due process rights. As indicated above, a protected interest arises either from the Due Process Clause itself or from state law. *See Thompson*, 490 U.S. at 460; *Hewitt*, 459 U.S. at 466. Fields has no constitutional right to enter a prison. He does not even have a statutory right in Virginia to enter a prison. The only people allowed by statute in Virginia to enter the interior of any state correctional facility are the Governor, members of the General Assembly and members of the Board of Corrections. *See* VA. CODE ANN. § 53.1-30 (2005 Repl. Vol.). Attorneys also are allowed to enter to confer with their clients; however, attorneys and all other persons are subject to limitations on their ability to enter a prison. VA. CODE ANN. § 53.1-30 (2005 Repl. Vol.). Decisions on prison administration and security are generally not second-guessed by courts, and, thus, Robinson's decision to disallow Fields from entering Wallens Ridge because he was found to be in possession of illegal drugs on the prison grounds should not be second-guessed either. *See Bell*, 441 U.S. at 546-47; *Jones*, 433 U.S. at 126. This decision did not violate Fields's constitutional rights because he did not have a right to enter the prison in the first place.

Moreover, a person who is not included on the statutory list of people who must

be allowed access to the interior of a prison may enter the prison only at the discretion of the Warden. The Warden is effectively providing a license to enter the facility. Fields had this license revoked because he brought illegal drugs onto prison property. If Fields had a job that was dependent on his ability to legally drive a car and his driver's license was revoked by a different state agency because he presented a danger to other motorists, he could not claim that his constitutional rights to employment should forbid the revocation of his driver's license. Just like a license to drive is not a constitutional right, neither is the ability to enter a prison.

Therefore, Fields may well have asserted that he had a property right in his job with the DCE; however, banishing a DCE employee from a prison for security purposes is within the rights and duties of the Warden of a prison and is not a violation of the outside employee's procedural due process rights.

### iii. Substantive Due Process Claim

The final § 1983 claim that Fields asserts is a denial of his right to substantive due process under the Fourteenth Amendment. This claim is alleged against both Robinson and the DCE. However, as previously discussed, the DCE cannot be held liable under § 1983, and Robinson cannot be held liable for monetary damages in his official capacity. *See Will*, 491 U.S. at 70–71. Therefore, the only remaining aspect of Fields's substantive due process claim to discuss is the allegation that Robinson violated Fields's right to substantive due process in his individual capacity or in his official capacity in a manner that would allow for equitable relief.

-22-

To establish a substantive due process violation, Fields must allege three elements: (1) a fundamental liberty interest, (2) that a state actor deprived him of this interest, and (3) an action that is fatally arbitrary, meaning that "the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." *See Shooting Point, L.L.C. v. Cumming*, 238 F. Supp. 2d 729, 738 (E.D. Va. 2002) (quoting *Sylvia Dev. Corp. v. Calvert County, Md.,* 238 F.3d 810, 827 (4th Cir. 1995)). Courts considering any substantive due process allegations should be "reluctant to expand the concept of substantive due process because the guideposts for responsible decision making in this unchartered area are scarce and open-ended." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992)); *Hawkins v. Freeman*, 195 F.3d 732, 738 (4th Cir. 1999).

With respect to cases involving executive action, such as the claim brought by Fields, the issue of fatal arbitrariness is a threshold question. *See County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998). Therefore, a substantive due process analysis must begin by asking if the action of a government official "shocks the contemporary conscience." *Lewis*, 523 U.S. at 847 n.8. It is only the most "egregious official conduct" that can be seen as constitutionally arbitrary. *See Lewis*, 523 U.S. at 846 (quoting *Collins*, 503 U.S. at 129). Substantive due process protects against power being exercised by an individual without any legitimate objective and in an arbitrary manner. *See Lewis*, 523 U.S. at 845–46. Furthermore, if the alleged conduct does not "shock the conscience," the claim will fail without any need to examine any asserted liberty interests. *See Lewis*, 523 U.S. at 847 n.8; *Hawkins*, 195 F.3d at 738.

-23-

The actions by Robinson, which Fields claims are infringements on his right to substantive due process, are not egregious and do not rise to the level of shocking one's conscience. The instances of Robinson's conduct that Fields takes issue with are: that Robinson allegedly caused the posting of a statement that Fields possessed illegal drugs on the prison's computer system, that Robinson allegedly stated to Erps that Fields's drug test would come back positive and that Robinson allegedly infringed upon Fields's property right in his employment with the DCE. None of these three actions was egregious to the point that they shocked the conscience of this court. Therefore, they do not meet the Supreme Court's threshold standard to establish a denial of substantive due process.

The statement posted on the prison computer system indicating that Fields possessed drugs was true and, thus, cannot constitute egregious conduct on the part of Robinson. The second statement, regarding Fields's drug test, was simply an opinion given by Robinson to Erps. This statement was entirely reasonable given the circumstances. A drug-sniffing dog singled Fields out, indicating that the dog detected the odor of illegal drugs on Fields. No drugs were found on Fields after a strip search. Instead, illegal drugs were found to be in Fields's automobile. Thus, it was reasonable for Robinson to assume that the drug dog detected the odor of drugs on Fields because Fields had been using the drugs found in his automobile. Making a statement reflecting this opinion based on these facts is not egregious or outrageous behavior.

Finally, Fields asserts that he was denied his property interest in his job by Robinson's decision to ban Fields from Wallens Ridge. Fields asserts that this

-24-

decision was arbitrary and amounted to a denial of substantive due process. However, substantive due process does not "impos[e] liability whenever someone cloaked with state authority causes harm." *See Lewis*, 523 U.S. at 848.

As previously indicated, the decision to exclude Fields was within Robinson's power as Warden. *See* VA. CODE ANN. § 53.1-30 (2005 Repl. Vol.); *see also Jones*, 433 U.S. at 126 (quoting *Procunier*, 416 U.S. at 405); *Wetzel*, 635 F.2d at 288. "[A]s long as prison authorities are rationally pursuing a legitimate penological objective, the administrator has the 'last word.'" *Wetzel*, 635 F.2d at 288 (quoting *Pittman v. Hutto*, 594 F.2d 407, 412 (4th Cir. 1977)). In this case, Robinson was acting within a legitimate interest to protect the security of his level five, maximum security prison. He acted in the interest of the prison's employees and inmates to protect them from a person who was found in possession of illegal drugs on prison property. Keeping illegal drugs and other contraband out of prisons is an extremely difficult job. To accomplish this, the Warden must have the power to exclude people who are a threat to the security of the institution. This is an even greater necessity with respect to people who have been caught with illegal drugs or other contraband on prison property.

The Virginia General Assembly has recognized the importance of maintaining security at state prisons, and has reflected this public policy in their enactment of § 53.1-30 of the Virginia Code. This code section provides a short list of persons who are allowed to enter the interior of state correctional facilities. The Governor, members of the General Assembly and members of the Board of Corrections are allowed to enter state prisons. *See* VA. CODE ANN. § 53.1-30(A) (2005 Repl. Vol.).

-25-

Attorneys also may enter prisons to confer with clients and witnesses; however, their entry may be subject to time limitations and other conditions. *See* VA. CODE ANN. § 53.1-30(A) (2005 Repl. Vol.). No other people are guaranteed the right to enter a prison, not even for employment purposes. Furthermore, the Warden has the ultimate power to exclude people from the prison he feels represent a threat to security.

Because the Warden of a prison, in Virginia, has the power to exclude individuals for introducing or attempting to introduce contraband into the prison, and because the Warden has the power to exclude visitors and persons who must enter the prison for business purposes if he believes the person represents a threat to prison security, Robinson's action of banishing Fields from Wallens Ridge was not egregious. In fact, this decision was reasonable given the fact that Fields was found in possession of illegal drugs on prison property. As a result, there was no conduct on the part of Robinson that could be viewed as constitutionally arbitrary because it was so egregious that it shocked the conscience.

The facts provided by Fields, and the power inherent in Robinson's position as Warden of Wallens Ridge, establish a rational basis for Robinson's decision. Therefore, the substantive due process analysis need not continue to examine the type of liberty interest Fields had in his employment with the DCE. Fields has failed to allege conduct sufficient to state a claim that he was denied his right to substantive due process under the Fourteenth Amendment.

## 2. Qualified Immunity From § 1983 Claims

Both the DCE and Robinson, in his official capacity, assert that their conduct is protected by the United States Constitution's Eleventh Amendment guarantee of sovereign immunity. Their Motion also states that Robinson's actions, in his individual capacity, are protected by qualified immunity. As noted above, the DCE is protected from suit based on the Eleventh Amendment and because the DCE is not considered a "person" subject to suit under § 1983. *See Fed. Mar. Comm'n*, 535 U.S. at 765; *Will*, 491 U.S. at 70–71. Additionally, no suit is possible for monetary damages against Robinson in his official capacity because of the Eleventh Amendment and the limitations on "personhood" under § 1983. *See Will*, 491 U.S. at 70–71. Therefore, all of the actions against the DCE and the actions against Robinson in his official capacity that could result in monetary recovery, must fail as a matter of law.

Qualified immunity is not available as a defense for an individual sued in his or her official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985). Therefore, any charges against Robinson in his official capacity for equitable relief, the only charges that escape sovereign immunity, also are not protected by qualified immunity. However, as discussed above, Fields has failed to state a constitutional claim that could entitle him to any relief pursuant to § 1983 against Robinson in either his official capacity for equitable relief or against Robinson in his individual capacity. Because Fields has failed to state a claim, this court need not examine the issue of qualified immunity with respect to Fields's charges against Robinson in his individual capacity.

-27-

However, this court does note that the analysis conducted of Fields's constitutional claims against Robinson would provide support for a finding that Robinson's actions were protected by qualified immunity. When an officer is sued for an alleged violation of a constitutional right, a ruling on qualified immunity should be made by the court at the earliest possible stages in the proceedings so that costs of litigation can be avoided when the defense is dispositive. *See Saucier v. Katz*, 533 U.S. 194, 200–01 (2001) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)). A qualified immunity analysis begins by determining if, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. If no constitutional right would have been violated if the allegations were true, the analysis ends and the officer is entitled to qualified immunity. *See Chavez v. Martinez*, 538 U.S. 760, 766 (2003); *Saucier*, 533 U.S. at 201. If no constitutional right was violated, there is then no need to consider whether the asserted right was clearly established. *See Chavez*, 538 U.S. at 766.

In this case, the analysis of Fields's § 1983 claims against Robinson demonstrates that Robinson was not responsible for any violation of Fields's constitutional rights. As a result, Robinson's discretionary actions are protected by qualified immunity, and Fields has failed to state a claim upon which relief may be granted.

-28-

*3. Remedies Against Robinson*

The constitutional analysis above indicates that Robinson's actions did not deny Fields any constitutional rights. Therefore, Fields has not alleged a constitutional violation that could serve as the basis for recovery under 42 U.S.C. § 1983. Because Fields has failed to state a claim under which relief could be granted pursuant to § 1983, no monetary damages are possible against Robinson in his individual capacity, and no equitable relief is possible against Robinson in his official capacity.

*4. State Law Claims*

Besides Fields's claims made under 42 U.S.C. § 1983, he also asserts state law tort causes of action against Robinson for interference with his employment and for defamation. The basis of the plaintiff's federal jurisdiction for his suit are his claims under § 1983. Because this complaint fails to state a federal claim as a matter of law, the supplemental jurisdiction based on 28 U.S.C. § 1367 for the various state law tort claims also will be deemed to have failed. These claims do not independently satisfy either federal question jurisdiction under 28 U.S.C. § 1331 or federal diversity jurisdiction under 28 U.S.C. § 1332. Therefore, the state law claims based on supplemental jurisdiction will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

Case 2:06-cv-00036-GMW-PMS   Document 17   Filed 11/14/06   Page 29 of 32   Pageid#: 104

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations.

1. There is no relief possible under § 1983 against the DCE because a state agency is not considered a "person" under § 1983 and is protected by sovereign immunity under the Eleventh Amendment;

2. There also is no monetary relief possible against Robinson in his official capacity because he is not considered a "person" subject to suit under § 1983;

3. Injunctive relief against Robinson in his official capacity would be possible under § 1983. However, the only possible types of injunctive relief available against Robinson would be a declaratory judgment that he violated Fields's constitutional rights or an injunction requiring Robinson to allow Fields to re-enter Wallens Ridge;

4. Robinson has the power under Virginia law to exclude someone in Fields's position from entering a state prison;

5. Fields has no constitutional right to enter a Virginia State Prison;

6. Robinson did not violate Fields's constitutional right to equal protection under the law by treating Fields differently than a DOC employee because Fields was not a DOC employee;

7. Robinson did not violate Fields's constitutional right to procedural due process;

8. Robinson's statement that he was absolutely sure that Fields's drug test would come back positive was not a violation of Fields's liberty interest, because it was not made publicly and because Fields was given a name-clearing hearing;

9. The internet posting of the statement that Fields had possessed illegal drugs, allegedly attributable to Robinson, is true and, thus, cannot be the subject of a violation of Fields's liberty interest;

10. While Fields may have had a property interest in his employment with the DCE, Robinson did not deny Fields any procedural due process with respect to that interest. Fields was given a full grievance procedure by his employer, the DCE, and Robinson did not deny him any access to that procedure.

Furthermore, Fields did not make any effort to appeal the actions by Robinson, and Robinson did nothing to hinder such an appeal;

11. Robinson did not deny Fields any substantive due process rights because his actions were not egregious and did not shock the conscience. Instead, Robinson's actions were rational and reasonable given the situation;

12. There were no constitutional violations properly alleged against Robinson in his individual capacity. Thus, his actions in his individual capacity also are protected by qualified immunity;

13. Robinson's actions in his official capacity are protected in part by sovereign immunity and, thus, cannot result in monetary recovery for Fields;

14. While injunctive relief would be available for Fields against Robinson in his official capacity, the facts alleged by Fields fail to demonstrate any constitutional violations by Robinson in his official capacity that could support such relief under § 1983; and

15. Fields's state law claims do not independently satisfy either federal question jurisdiction under 28 U.S.C. § 1331 or federal diversity jurisdiction under 28 U.S.C. § 1332.

## IV. Recommended Disposition

Based on the above stated reasons, I recommend that the court grant the Motion, (Docket Item No. 8), and dismiss the plaintiff's claims under 42 U.S.C. § 1983 with prejudice pursuant to Federal Rule 12(b)(6). I also recommend dismissing the plaintiff's state law claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## V. Notice To Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636 (b)(1)(C):

-31-

Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in the matter to the Honorable Glen M. Williams, Senior United States District Judge.

The clerk is directed to send copies of this Report and Recommendation to all counsel of record.

**DATED:** This 14th day of November 2006.


/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

-32-